## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **JAMES COLEMAN**, on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br><br>v.<br><br>**WISCONSIN PHYSICIANS SERVICE INSURANCE CORPORATION**,<br><br>       Defendant. | Case No. 3:24-cv-670<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

James Coleman ("Plaintiff"), through his attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Wisconsin Physicians Service Insurance Corporation ("WPS" or "Defendant"), and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities. Plaintiff alleges the following on information and belief—except as to his own actions, counsel's investigations, and facts of public record.

### NATURE OF ACTION

1. This class action arises from Defendant's failure to protect highly sensitive data.

2. Defendant is a health benefits provider and contractor for the Centers for Medicare & Medicaid (CMS) headquartered in Madison, Wisconsin.[1] WPS "handles Medicare Part A/B claims and related services for CMS."[2]

---

[1] https://www.cms.gov/newsroom/press-releases/cms-notifies-individuals-potentially-impacted-data-breach (last visited September 18, 2024).
[2] *Id.*

1

3.      As such, Defendant stores a litany of highly sensitive personal identifiable information ("PII") and protected health information ("PHI")—together "PII/PHI"—about its current and former patients. But Defendant lost control over that data when cybercriminals infiltrated its insufficiently protected computer systems in a data breach (the "Data Breach").

4.      The Data Breach was caused by a "security vulnerability in the MOVEit software, a third-party application developed by Progress Software and used by WPS for the transfer of files in providing services to CMS."[3]

5.      The cybercriminals had access to Defendant's network between May 27 and May 31, 2024 before the breach was discovered. In other words, Defendant had no effective means to prevent, detect, stop, or mitigate breaches of its systems—thereby allowing cybercriminals unrestricted access to its current and former patients' PII/PHI.

6.      On information and belief, cybercriminals were able to breach Defendant's systems because Defendant failed to adequately train its employees on cybersecurity and failed to maintain reasonable security safeguards or protocols to protect the Class's PII/PHI. In short, Defendant's failures placed the Class's PII/PHI in a vulnerable position—rendering them easy targets for cybercriminals.

7.      Plaintiff is a Data Breach victim, and he brings this class action on behalf of himself, and all others harmed by Defendant's misconduct.

8.      The exposure of one's PII/PHI to cybercriminals is a bell that cannot be unrung. Before this data breach, its current and former patients' private information was exactly that—private. Not anymore. Now, their private information is forever exposed and unsecure.

---

[3] *Id.*

**PARTIES**

9.      Plaintiff, James Coleman, is a natural person and citizen of Wisconsin. He resides in Stoughton, Wisconsin where he intends to remain.

10.     Defendant, Wisconsin Physicians Service Insurance Corporation, is a service corporation formed under the laws of Tennessee with its headquarters in Madison, Wisconsin.

**JURISDICTION AND VENUE**

11.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Defendant and at least one class member are citizens of different states. And there are over 100 putative Class members.

12.     This Court has personal jurisdiction over Defendant because it is headquartered in Wisconsin, regularly conducts business in Wisconsin, and has sufficient minimum contacts in Wisconsin.

13.     Venue is proper in this Court because Defendant is headquartered in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

**BACKGROUND**

***Defendant Collected and Stored the PII/PHI of Plaintiff and the Class***

14.     Defendant is a contractor for the Centers for Medicare & Medicaid (CMS) headquartered in Madison, Wisconsin.

15.     As part of its business, Defendant receives and maintains the PII/PHI of thousands of its current and former patients.

16.     WPS utilizes Progress Software's MOVEit tool, on information and belief, to transfer patients' PHI.

3

17.     In collecting and maintaining the PII/PHI, Defendant agreed it would safeguard the data in accordance with its internal policies, state law, and federal law. After all, Plaintiff and Class members themselves took reasonable steps to secure their PII/PHI.

18.     Under state and federal law, businesses like Defendant have duties to protect its current and former patients' PII/PHI and to notify them about breaches.

19.     Defendant recognizes these duties, declaring in its "Privacy Policy" that:

    a.      "we take our customers' privacy seriously and understand that visitors of our website need to be in control of their personally identifiable information;"

    b.      "WPS is committed to ensuring that our customers' information is properly collected, used, and maintained;"

    c.      "We will not disclose, give, sell, or transfer any personally identifiable information that you provide through our website to third parties except as outlined in this policy and as otherwise permitted by law;" and

    d.      "We implement reasonable safeguards, including encryption technology and physical security at the location of the server where information is stored."[4]

20.     Similarly, on its "Notice of Privacy Practices" Defendant declares:

    a.      "WPS is required by law to maintain the privacy of your Protected Health Information ("PHI"), and to give you this notice about our privacy practices, our legal duties, and your rights concerning your PHI;"

    b.      "WPS is also required to notify you of any breach of your unsecured PHI;"

---

[4] https://www.wpshealth.com/shared/privacy-policy.shtml (last visited September 19, 2024).

c.     "WPS is committed to ensuring that your PHI is protected from unauthorized use or disclosure;"

d.     "We have implemented strong security measures and processes to keep oral, written and electronic PHI secure across our organization. For example, any employee or contractor who accesses your PHI must comply with all of our information security requirements including, but not limited to signing confidentiality agreements, completing annual information security training and using encryption when transmitting data to any external party;"

e.     "At WPS, we restrict access to nonpublic personal information to those employees who need to know that information to provide products or services to you;" and

f.     "We maintain physical, electronic, and procedural safeguards to protect nonpublic personal information against unauthorized access and use. These safeguards comply with federal regulations on the protection of nonpublic personal information."[5]

21.    Via these declarations, Defendant then induces prospective patients to disclose an extensive variety of PII/PHI, including their: names, dates of birth, gender, Social Security numbers or Individual Taxpayer Identification numbers, mailing addresses, hospital account number, dates of service, and Medicare beneficiary identifier and/or health insurance claim numbers.[6]

---

[5] chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.wpshealth.com/resources/files/privacy_practices.pdf (last visited September 19, 2024).
[6] https://www.cms.gov/newsroom/press-releases/cms-notifies-individuals-potentially-impacted-data-breach (last visited September 19, 2024).

*Defendant's Data Breach*

22.     On May 27, 2023, Defendant was hacked in the Data Breach.[7]

23.     The incident involved a security vulnerability in the MOVEit software, a third-party application used by WPS for the transfer of files during the Medicare claims process.[8]

24.     The vulnerability in the MOVEit software made it possible, between May 27 through 31, 2023, for unauthorized third parties to gain access to Personal Information that was transferred using MOVEit.[9]

25.     On July 8, 2024, WPS notified CMS that files containing protected health information, such as Medicare claims data, and related personally identifiable was compromised in the cybersecurity incident.[10]

26.     Defendant's investigation into the incident reveled that "an unauthorized third party copied files from WPS's MOVEit file transfer system."[11] And, on July 8, 2024, when evaluating a different portion of the impacted files, WPS determined that some of the files contained Personal Information, at which point it informed CMS.[12]

27.     Because of Defendant's Data Breach, at least the following types of PII/PHI were compromised:

        a.     names;

        b.     dates of birth;

        c.     Social Security numbers or Individual Taxpayer Identification numbers;

---

[7] *https://www.cms.gov/newsroom/press-releases/cms-notifies-individuals-potentially-impacted-data-breach*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*

      d.      mailing address;

      e.      gender;

      f.      hospital account number;

      g.      dates of service; and

      h.      Medicare Beneficiary Identifier (MBI) and/or health insurance claim number. Ex. A.

28.      In total, Defendant injured at least 946,801 persons—via the exposure of their PII/PHI—in the Data Breach.[13] Upon information and belief, these 946,801 persons include its current and former patients.

29.      And yet, Defendant waited until July 8, 2024, before it notified CMS of the Data Breach—more than an entire year after the Data Breach was discovered.[14]

30.      Upon information and belief, Defendant has not yet sent individual breach notices to the victims of the Data Breach, however CMS shared a sample of the letter WPS is allegedly sending to those affected by the Data Breach. A sample of this is attached as Exhibit A.

31.      Thus, Defendant kept the Class in the dark—thereby depriving the Class of the opportunity to try and mitigate their injuries in a timely manner.

32.      Defendant's sample letter acknowledged that the Data Breach created a present, continuing, and significant risk of suffering identity theft, encouraging Plaintiff and the Class to:

      a.      Enroll in Experian Identity Protection Monitoring Services;

      b.      Obtain a Free Credit Report; and

---

[13] *Id.*
[14] *Id.*

c.    Call your local law enforcement agency and file a police report if you find suspicious activity on your credit reports or have reason to believe your information is being misused. Ex. A.

33.    Defendant failed its duties when its inadequate security practices caused the Data Breach. In other words, Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the PII/PHI. And thus, Defendant caused widespread injury and monetary damages.

34.    Since the breach, Defendant has promised to "take all appropriate actions to safeguard the information entrusted to CMS." Ex. A But this is too little too late. Simply put, these actions—which Defendant now recognizes as necessary—should have been implemented *before* the Data Breach.

35.    On information and belief, Defendant failed to adequately train its employees on reasonable cybersecurity protocols or implement reasonable security measures.

36.    Defendant has done little to remedy its Data Breach. True, Defendant has offered some victims credit monitoring and identity related services. But upon information and belief, such services are wholly insufficient to compensate Plaintiff and Class members for the injuries that Defendant inflicted upon them.

37.    Because of Defendant's Data Breach, the sensitive PII/PHI of Plaintiff and Class members was placed into the hands of cybercriminals—inflicting numerous injuries and significant damages upon Plaintiff and Class members.

38.    Upon information and belief, the cybercriminals in question are particularly sophisticated. After all, the cybercriminals defeated the relevant data security systems and gained actual access to sensitive data.

39.    And as the Harvard Business Review notes, such "[c]ybercriminals frequently use the Dark Web—a hub of criminal and illicit activity—to sell data from companies that they have gained unauthorized access to through credential stuffing attacks, phishing attacks, [or] hacking."[15]

40.    Thus, on information and belief, Plaintiff's and the Class's stolen PII/PHI has already been published—or will be published imminently—by cybercriminals on the Dark Web.

***Plaintiff's Experiences and Injuries***

41.    Plaintiff James Coleman is a former patient of Defendant, having received services from Defendant between 2022-2023.

42.    Thus, Defendant obtained and maintained Plaintiff's PII/PHI.

43.    As a result, Plaintiff was injured by Defendant's Data Breach.

44.    As a condition of receiving healthcare services, Plaintiff provided Defendant with his PII/PHI. Defendant used that PII/PHI to facilitate its provision of services and to collect payment.

45.    Plaintiff provided his PII/PHI to Defendant and trusted the company would use reasonable measures to protect it according to Defendant's internal policies, as well as state and federal law. Defendant obtained and continues to maintain Plaintiff's PII/PHI and has a continuing legal duty and obligation to protect that PII/PHI from unauthorized access and disclosure.

46.    Plaintiff reasonably understood that a portion of the funds paid to Defendant would be used to pay for adequate cybersecurity and protection of PII/PHI.

47.    Thus, on information and belief, Plaintiff's PII/PHI has already been published—or will be published imminently—by cybercriminals on the Dark Web.

---

[15] Brenda R. Sharton, *Your Company's Data Is for Sale on the Dark Web. Should You Buy It Back?*, HARVARD BUS. REV. (Jan. 4, 2023) https://hbr.org/2023/01/your-companys-data-is-for-sale-on-the-dark-web-should-you-buy-it-back.

48.     Through its Data Breach, Defendant compromised Plaintiff's PII/PHI. Upon information and belief, the exposed PII/PHI includes his name, date of birth, Social Security number or Individual Taxpayer Identification number, mailing address, gender, hospital account number, dates of service, and Medicare Beneficiary Identifier and/or health insurance claim number.

49.     Plaintiff has spent—and will continue to spend—significant time and effort monitoring his accounts to protect himself from identity theft. After all, Defendant directed Class members to take those steps in its breach notice.

50.     Plaintiff fears for his personal financial security and worries about what information was exposed in the Data Breach.

51.     Because of Defendant's Data Breach, Plaintiff has suffered—and will continue to suffer from—anxiety, sleep disruption, stress, fear, and frustration. Such injuries go far beyond allegations of mere worry or inconvenience. Rather, Plaintiff's injuries are precisely the type of injuries that the law contemplates and addresses.

52.     Plaintiff suffered actual injury from the exposure and theft of his PII/PHI—which violates his rights to privacy.

53.     Plaintiff suffered actual injury in the form of damages to and diminution in the value of his PII/PHI. After all, PII/PHI is a form of intangible property—property that Defendant was required to adequately protect.

54.     Plaintiff suffered imminent and impending injury arising from the substantially increased risk of fraud, misuse, and identity theft—all because Defendant's Data Breach placed Plaintiff's PII/PHI right in the hands of criminals.

10

55.     Indeed, following the Data Breach, Plaintiff began experiencing a substantial increase in spam and scam phone calls and text messages, suggesting that his PII has been placed in the hands of cybercriminals.

56.     On information and belief, Plaintiff's phone number was compromised as a result of the Data Breach, as cybercriminals are able to use an individual's PII that is accessible on the dark web, as Plaintiff's is here, to gather and steal even more information.

57.     Because of the Data Breach, Plaintiff anticipates spending considerable amounts of time and money to try and mitigate his injuries.

58.     Today, Plaintiff has a continuing interest in ensuring that his PII/PHI—which, upon information and belief, remains backed up in Defendant's possession—is protected and safeguarded from additional breaches.

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

59.     Because of Defendant's failure to prevent the Data Breach, Plaintiff and Class members suffered—and will continue to suffer—damages. These damages include, *inter alia*, monetary losses, lost time, anxiety, and emotional distress. Also, they suffered or are at an increased risk of suffering:

a.     loss of the opportunity to control how their PII/PHI is used;

b.     diminution in value of their PII/PHI;

c.     compromise and continuing publication of their PII/PHI;

d.     out-of-pocket costs from trying to prevent, detect, and recovery from identity theft and fraud;

e.  lost opportunity costs and wages from spending time trying to mitigate the fallout of the Data Breach by, *inter alia*, preventing, detecting, contesting, and recovering from identify theft and fraud;

f.  delay in receipt of tax refund monies;

g.  unauthorized use of their stolen PII/PHI; and

h.  continued risk to their PII/PHI—which remains in Defendant's possession—and is thus as risk for futures breaches so long as Defendant fails to take appropriate measures to protect the PII/PHI.

60.  Stolen PII/PHI is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII/PHI can be worth up to $1,000.00 depending on the type of information obtained.

61.  The value of Plaintiff and Class's PII/PHI on the black market is considerable. Stolen PII/PHI trades on the black market for years. And criminals frequently post and sell stolen information openly and directly on the "Dark Web"—further exposing the information.

62.  It can take victims years to discover such identity theft and fraud. This gives criminals plenty of time to sell the PII/PHI far and wide.

63.  One way that criminals profit from stolen PII/PHI is by creating comprehensive dossiers on individuals called "Fullz" packages. These dossiers are both shockingly accurate and comprehensive. Criminals create them by cross-referencing and combining two sources of data— first the stolen PII/PHI, and second, unregulated data found elsewhere on the internet (like phone numbers, emails, addresses, etc.).

64.  The development of "Fullz" packages means that the PII/PHI exposed in the Data Breach can easily be linked to data of Plaintiff and the Class that is available on the internet.

65.    In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII/PHI stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and Class members, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff and other Class members' stolen PII/PHI is being misused, and that such misuse is fairly traceable to the Data Breach.

66.    Defendant disclosed the PII/PHI of Plaintiff and Class members for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the PII/PHI of Plaintiff and Class members to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PII/PHI.

67.    Defendant's failure to promptly and properly notify Plaintiff and Class members of the Data Breach exacerbated Plaintiff and Class members' injury by depriving them of the earliest ability to take appropriate measures to protect their PII/PHI and take other necessary steps to mitigate the harm caused by the Data Breach.

***Defendant Knew—Or Should Have Known—of the Risk of a Data Breach***

68.    Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in recent years.

69.    In 2021, a record 1,862 data breaches occurred, exposing approximately

293,927,708 sensitive records—a 68% increase from 2020.[16] Of the 1,862 recorded data breaches, 330 of them, or 17.7% were in the medical or healthcare industry.[17] Those 330 reported breaches exposed nearly 30 million sensitive records (28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.[18]

70.     In light of recent high profile cybersecurity incidents at other healthcare partner and provider companies, including HCA Healthcare (11 million patients, July 2023), Managed Care of North America (8 million patients, March 2023), PharMerica Corporation (5 million patients, March 2023), HealthEC LLC (4 million patients, July 2023), ESO Solutions, Inc. (2.7 million patients, September 2023), Prospect Medical Holdings, Inc. (1.3 million patients, July-August 2023), Defendant knew or should have known that its electronic records would be targeted by cybercriminals.

71.     Indeed, cyberattacks have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service issue warnings to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[19]

72.     In fact, according to the cybersecurity firm Mimecast, 90% of healthcare

---

[16] *See 2021 Data Breach Annual Report*, IDENTITY THEFT RESOURCE CENTER (Jan. 2022) https://notified.idtheftcenter.org/s/.
[17] *Id.*
[18] *Id.*
[19] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware.

organizations experienced cyberattacks in the past year.[20]

73.     Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

***Defendant Failed to Follow FTC Guidelines***

74.     According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.  Thus, the FTC issued numerous guidelines identifying best data security practices that businesses—like Defendant—should use to protect against unlawful data exposure.

75.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*. There, the FTC set guidelines for what data security principles and practices businesses must use.[21]  The FTC declared that, *inter alia*, businesses must:

> a.      protect the personal customer information that they keep;
>
> b.      properly dispose of personal information that is no longer needed;
>
> c.      encrypt information stored on computer networks;
>
> d.      understand their network's vulnerabilities; and
>
> e.      implement policies to correct security problems.

76.     The guidelines also recommend that businesses watch for the transmission of large amounts of data out of the system—and then have a response plan ready for such a breach.

77.     Furthermore, the FTC explains that companies must:

> a.      not maintain information longer than is needed to authorize a transaction;

---

[20]  *See* Maria Henriquez, *Iowa City Hospital Suffers Phishing Attack*, SECURITY MAGAZINE (Nov. 23, 2020), https://www.securitymagazine.com/articles/93988-iowa-city-hospital-suffers-phishing-attack (last visited Sept. 19, 2024).
[21] *Protecting Personal Information: A Guide for Business,* FED TRADE COMMISSION (Oct. 2016) https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

b.      limit access to sensitive data;

c.      require complex passwords to be used on networks;

d.      use industry-tested methods for security;

e.      monitor for suspicious activity on the network; and

f.      verify that third-party service providers use reasonable security measures.

78.      The FTC brings enforcement actions against businesses for failing to protect customer data adequately and reasonably. Thus, the FTC treats the failure—to use reasonable and appropriate measures to protect against unauthorized access to confidential consumer data—as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

79.      In short, Defendant's failure to use reasonable and appropriate measures to protect against unauthorized access to its current and former patients' data constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Failed to Follow Industry Standards***

80.      Several best practices have been identified that—at a *minimum*—should be implemented by businesses like Defendant. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

81.      Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers;

16

monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

82.    Upon information and belief, WPS failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04)These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, WPS opened the door to the criminals—thereby causing the Data Breach.

83.    These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendant opened the door to the criminals—thereby causing the Data Breach.

***Defendant Violated HIPAA***

84.    HIPAA circumscribes security provisions and data privacy responsibilities designed to keep patients' medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of protected health information.[22]

---

[22] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, *inter alia*: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.

85.     HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of PII/PHI and PHI is properly maintained.[23]

86.     The Data Breach itself resulted from a combination of inadequacies showing Defendant failed to comply with safeguards mandated by HIPAA. Defendant's security failures include, but are not limited to:

a.      failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

b.      failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

c.      failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

d.      failing to ensure compliance with HIPAA security standards by Defendant's workforce in violation of 45 C.F.R. § 164.306(a)(4);

e.      failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to

---

[23] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f.    failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g.    failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h.    failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

i.    failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

87.    Simply put, the Data Breach resulted from a combination of insufficiencies that demonstrate Defendant failed to comply with safeguards mandated by HIPAA regulations.

## CLASS ACTION ALLEGATIONS

88.    Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following class:

> All individuals residing in the United States whose PII/PHI was compromised in the Data Breach discovered by WPS in May 2023, including all those individuals who received notice of the breach.

89.     Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

90.     Plaintiff reserves the right to amend the class definition.

91.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

92.     Ascertainability. All members of the proposed Class are readily ascertainable from information in Defendant's custody and control. After all, Defendant already identified some individuals and sent them data breach notices.

93.     Numerosity. The Class members are so numerous that joinder of all Class members is impracticable. Upon information and belief, the proposed Class includes at least 946,801 members.

94.     Typicality. Plaintiff's claims are typical of Class members' claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

95.     Adequacy. Plaintiff will fairly and adequately protect the proposed Class's common interests. his interests do not conflict with Class members' interests. And Plaintiff has retained counsel—including lead counsel—that is experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf.

96.     Commonality and Predominance. Plaintiff's and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting

individual Class members—for which a class wide proceeding can answer for all Class members. In fact, a class wide proceeding is necessary to answer the following questions:

    a.    if Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's PII/PHI;

    b.    if Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    c.    if Defendant were negligent in maintaining, protecting, and securing PII/PHI;

    d.    if Defendant breached contract promises to safeguard Plaintiff and the Class's PII/PHI;

    e.    if Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

    f.    if Defendant's Breach Notice was reasonable;

    g.    if the Data Breach caused Plaintiff and the Class injuries;

    h.    what the proper damages measure is; and

    i.    if Plaintiff and the Class are entitled to damages, treble damages, and or injunctive relief.

97.    <u>Superiority.</u> A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense that individual litigation against Defendant would require. Thus, it would be practically impossible for Class members, on an individual basis, to obtain effective redress for

their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

**FIRST CAUSE OF ACTION**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

98.     Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

99.     Plaintiff and the Class entrusted their PII/PHI to Defendant on the premise and with the understanding that Defendant would safeguard their PII/PHI, use their PII/PHI for business purposes only, and/or not disclose their PII/PHI to unauthorized third parties.

100.     Defendant owed a duty of care to Plaintiff and Class members because it was foreseeable that Defendant's failure—to use adequate data security in accordance with industry standards for data security—would compromise their PII/PHI in a data breach. And here, that foreseeable danger came to pass.

101.     Defendant has full knowledge of the sensitivity of the PII/PHI and the types of harm that Plaintiff and the Class could and would suffer if their PII/PHI was wrongfully disclosed.

102.     Defendant owed these duties to Plaintiff and Class members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security practices. After all, Defendant actively sought and obtained Plaintiff and Class members' PII/PHI.

103.     Defendant owed—to Plaintiff and Class members—at least the following duties to:

a.  exercise reasonable care in handling and using the PII/PHI in its care and custody;

b.  implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized;

c.  promptly detect attempts at unauthorized access;

d.  notify Plaintiff and Class members within a reasonable timeframe of any breach to the security of their PII/PHI.

104.    Thus, Defendant owed a duty to timely and accurately disclose to Plaintiff and Class members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiff and Class members to take appropriate measures to protect their PII/PHI, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

105.    Defendant also had a duty to exercise appropriate clearinghouse practices to remove PII/PHI it was no longer required to retain under applicable regulations.

106.    Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII/PHI of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

107.    Defendant's duty to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential PII/PHI, a necessary part of obtaining services from Defendant.

108.    The risk that unauthorized persons would attempt to gain access to the PII/PHI and misuse it was foreseeable. Given that Defendant hold vast amounts of PII/PHI, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the PII/PHI —whether by malware or otherwise.

109.    PII/PHI is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII/PHI of Plaintiff and Class members' and the importance of exercising reasonable care in handling it.

110.    Defendant improperly and inadequately safeguarded the PII/PHI of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

111.    Defendant breached these duties as evidenced by the Data Breach.

112.    Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Class members' PII/PHI by:

      a.    disclosing and providing access to this information to third parties and

      b.    failing to properly supervise both the way the PII/PHI was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

113.    Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and PII/PHI of Plaintiff and Class members which actually and proximately caused the Data Breach and Plaintiff and Class members' injury.

114.     Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff and Class members' injuries-in-fact.

115.     Defendant has admitted that the PII/PHI of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

116.     As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and Class members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

117.     And, on information and belief, Plaintiff's PII/PHI has already been published—or will be published imminently—by cybercriminals on the Dark Web.

118.     Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and Class members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII/PHI by criminals, improper disclosure of their PII/PHI, lost benefit of their bargain, lost value of their PII/PHI, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

<u>**SECOND CAUSE OF ACTION**</u>
**Negligence *per se***
**(On Behalf of Plaintiff and the Class)**

119.     Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

120.     Under the FTC Act, 15 U.S.C. § 45, Defendant had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class members' PII/PHI.

121.     Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the PII/PHI entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff and the Class members' sensitive PII/PHI.

122.     Defendant breached its respective duties to Plaintiff and Class members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII/PHI.

123.     Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect PII/PHI and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII/PHI Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

124.     The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

125.     But for Defendant's wrongful and negligent breach of its duties owed, Plaintiff and Class members would not have been injured.

126.     The injury and harm suffered by Plaintiff and Class members was the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known

that Defendant was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII/PHI.

127.    Similarly, under HIPAA, Defendant had a duty to follow HIPAA standards for privacy and security practices—as to protect Plaintiff's and Class members' PHI.

128.    Defendant violated its duty under HIPAA by failing to use reasonable measures to protect its PHI and by not complying with applicable regulations detailed *supra*. Here too, Defendant's conduct was particularly unreasonable given the nature and amount of PHI that Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

129.    Defendant's various violations and its failure to comply with applicable laws and regulations constitutes negligence *per se*.

130.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

**THIRD CAUSE OF ACTION**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

131.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

132.    Plaintiff and Class members were required to provide their PII/PHI to Defendant as a condition of receiving services provided by Defendant. Plaintiff and Class members provided their PII/PHI to Defendant in exchange for Defendant's services.

133.    Plaintiff and Class members reasonably understood that a portion of their payments would be used to pay for adequate cybersecurity measures.

27

134.     Plaintiff and Class members reasonably understood that Defendant would use adequate cybersecurity measures to protect the PII/PHI that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

135.     Plaintiff and the Class members accepted Defendant's offers by disclosing their PII/PHI to Defendant in exchange for services.

136.     In turn, and through internal policies, Defendant agreed to protect and not disclose the PII/PHI to unauthorized persons.

137.     In its Privacy Policy, Defendant represented that they had a legal duty to protect Plaintiff's and Class Member's PII/PHI.

138.     Implicit in the parties' agreement was that Defendant would provide Plaintiff and Class members with prompt and adequate notice of all unauthorized access and/or theft of their PII/PHI.

139.     After all, Plaintiff and Class members would not have entrusted their PII/PHI to Defendant in the absence of such an agreement with Defendant.

140.     Plaintiff and the Class fully performed their obligations under the implied contracts with Defendant.

141.     The covenant of good faith and fair dealing is an element of every contract. Thus, parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—and not merely the letter—of the bargain. In short, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

142.    Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction. And fair dealing may require more than honesty.

143.    Defendant materially breached the contracts it entered with Plaintiff and Class members by:

    a.    failing to safeguard their information;

    b.    failing to notify them promptly of the intrusion into its computer systems that compromised such information.

    c.    failing to comply with industry standards;

    d.    failing to comply with the legal obligations necessarily incorporated into the agreements; and

    e.    failing to ensure the confidentiality and integrity of the electronic PII/PHI that Defendant created, received, maintained, and transmitted.

144.    In these and other ways, Defendant violated its duty of good faith and fair dealing.

145.    Defendant's material breaches were the direct and proximate cause of Plaintiff's and Class members' injuries (as detailed *supra*).

146.    And, on information and belief, Plaintiff's PII/PHI has already been published—or will be published imminently—by cybercriminals on the Dark Web.

147.    Plaintiff and Class members performed as required under the relevant agreements, or such performance was waived by Defendant's conduct.

**FOURTH CAUSE OF ACTION**
**Invasion of Privacy**
**(On Behalf of Plaintiff and the Class)**

148.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

149.   The State of Wisconsin recognizes the right of privacy as codified by Wis. Stat. § 995.50.

150.   Notably, § 995.50(2)(am) defines "invasion of privacy" as including:

a.   "Intrusion upon the privacy of another of a nature highly offensive to a reasonable person . . . in a place that a reasonable person would consider private[.]"

b.   "Publicity given to a matter concerning the private life of another, of a kind highly offensive to a reasonable person, if the defendant has acted either unreasonably or recklessly as to whether there was a legitimate public interest in the matter involved, or with actual knowledge that none existed."

151.   Plaintiff and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential PII/PHI and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

152.   Defendant owed a duty to its current and former patients, including Plaintiff and the Class, to keep this information confidential.

153.   The unauthorized acquisition (i.e., theft) by a third party of Plaintiff and Class members' PII/PHI is highly offensive to a reasonable person.

154.   The intrusion was into a place or thing which was private and entitled to be private. Plaintiff and the Class disclosed their sensitive and confidential information to Defendant, but did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

155.    The Data Breach constitutes an intentional interference with Plaintiff's and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

156.    Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

157.    Defendant acted with a knowing state of mind when it failed to notify Plaintiff and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

158.    Acting with knowledge, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

159.    As a proximate result of Defendant's acts and omissions, the private and sensitive PII/PHI of Plaintiff and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages (as detailed *supra*).

160.    And, on information and belief, Plaintiff's PII/PHI has already been published—or will be published imminently—by cybercriminals on the Dark Web.

161.    Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their PII/PHI are still maintained by Defendant with their inadequate cybersecurity system and policies.

162.    Plaintiff and the Class have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for

monetary damages will not end Defendant's inability to safeguard the PII/PHI of Plaintiff and the Class.

163.     In addition to injunctive relief, Plaintiff, on behalf of himself and the other Class members, also seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

**FIFTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

164.     Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

165.     This claim is pleaded in the alternative to the breach of implied contract claim.

166.     Plaintiff and Class members conferred a benefit upon Defendant. After all, Defendant benefitted from (1) their payment and/or (2) using their PII/PHI to facilitate its business operations.

167.     Defendant appreciated or had knowledge of the benefits it received from Plaintiff and Class members.

168.     Plaintiff and Class members reasonably understood that Defendant would use adequate cybersecurity measures to protect the PII/PHI that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

169.     Defendant enriched itself by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class members' PII/PHI.

170.     Instead of providing a reasonable level of security, or retention policies, that would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiff and Class members by utilizing cheaper, ineffective security measures.

Plaintiff and Class members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

171.     Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and Class members' PII/PHI and/or payment because Defendant failed to adequately protect their PII/PHI.

172.     Plaintiff and Class members have no adequate remedy at law.

173.     Defendant should be compelled to disgorge into a common fund—for the benefit of Plaintiff and Class members—all unlawful or inequitable proceeds that it received because of its misconduct.

### SIXTH CAUSE OF ACTION
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiff and the Class)**

174.     Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

175.     Given the relationship between Defendant and Plaintiff and Class members, where Defendant became guardian of Plaintiff's and Class members' PII/PHI, Defendant became a fiduciary by its undertaking and guardianship of the PII/PHI, to act primarily for Plaintiff and Class members, (1) for the safeguarding of Plaintiff and Class members' PII/PHI; (2) to timely notify Plaintiff and Class members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendant did and does store.

176.     Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class members upon matters within the scope of Defendant's relationship with them—especially to secure their PII/PHI.

177.     Because of the highly sensitive nature of the PII/PHI, Plaintiff and Class members would not have entrusted Defendant, or anyone in Defendant's position, to retain their PII/PHI had they known the reality of Defendant's inadequate data security practices.

178.     Defendant breached its fiduciary duties to Plaintiff and Class members by failing to sufficiently encrypt or otherwise protect Plaintiff's and Class members' PII/PHI.

179.     Defendant also breached its fiduciary duties to Plaintiff and Class members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period.

180.     As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiff and Class members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

### SEVENTH CAUSE OF ACTION
**Violation of the Wisconsin Deceptive Trade Practices Act**
**Wis. Stat. §§ 100.18, *et seq*.**
**(On Behalf of Plaintiff and the Class)**

181.     Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

182.     The Wisconsin Deceptive Trade Practices Act ("WDTPA") prohibits a person or firm with intent to offer anything for sale or hire from making any representations to "the public" that are "untrue, deceptive or misleading." Wis. Stat. § 100.18(1).

183.     Here, Defendant violated WDTPA because (1) Defendant represented (affirmatively and/or by omission) to the public that it would keep sensitive information confidential—as to induce the public to disclose such information, (2) such representations were untrue, deceptive, and/or misleading because Defendant used inadequate data security systems, and (3) such representations caused pecuniary losses as detailed infra.

34

184.   Furthermore, Defendant's WDTPA violations are evidenced by Defendant's various failures which include, *inter alia*:

a.   failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Class members' PII/PHI, which was a direct and proximate cause of the Data Breach;

b.   failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c.   failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class members' PII/PHI, including duties imposed by the FTC Act, 15 U.S.C. § 45, the FCRA, 15 U.S.C. § 1681e, and the GLBA, 15 U.S.C. § 6801, *et seq*., which was a direct and proximate cause of the Data Breach;

d.   omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and Class members' PII/PHI; and

e.   omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class members' PII/PHI, including duties imposed by the FTC Act, 15 U.S.C. § 45, the FCRA, 15 U.S.C. § 1681e, and the GLBA, 15 U.S.C. § 6801, *et seq*.

185.    Defendant's omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of their PII/PHI.

186.    Defendant intended to mislead Plaintiff and Class members and induce them to rely on its omissions.

187.    Had Defendant disclosed to Plaintiff and Class members that its data systems were not secure—and thus vulnerable to attack—Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Defendant accepted the PII/PHI that Plaintiff and Class members entrusted to it while keeping the inadequate state of its security controls secret from the public. Accordingly, Plaintiff and Class members acted reasonably in relying on Defendant's omissions, the truth of which they could not have discovered through reasonable investigation.

188.    Defendant acted intentionally, knowingly, maliciously, and recklessly disregarded Plaintiff's and Class members' rights.

189.    As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their PII/PHI.

190.    And, on information and belief, Plaintiff's PII/PHI has already been published—or will be published imminently—by cybercriminals on the Dark Web.

191.    Plaintiff and Class members seek all monetary and non-monetary relief allowed by law.

## EIGHTH CAUSE OF ACTION
### Violations of Wis. Stat. § 146.82.
### (On Behalf of Plaintiff and the Class)

192.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

193.    Wis. Stat. Ann. § 146.82(1) establishes that "[a]ll patient health care records shall remain confidential" and that "[p]atient health care records may be released only to the persons designated in this section or to other persons with the informed consent of the patient or of a person authorized by the patient."

194.    Critically, § 146.836 provides that "[s]ections 146.815, 146.82, 146.83 (4) and 146.835 apply to all patient health care records, including those on which written, drawn, printed, spoken, visual, electromagnetic or digital information is recorded or preserved, regardless of physical form or characteristics."

195.    And § 146.84(1)(c) establishes that "[a]n individual may bring an action to enjoin any violation of s. 146.82 or 146.83 or to compel compliance with s. 146.82 or 146.83 and may, in the same action, seek damages as provided in this subsection."

196.    Regarding damages, § 146.84(1)(b–bm) provides that:

    a.    "Any person, including the state or any political subdivision of the state, who violates s. 146.82 or 146.83 in a manner that is knowing and willful shall be liable to any person injured as a result of the violation for actual damages to that person, exemplary damages of not more than $25,000 and costs and reasonable actual attorney fees."

    b.    "Any person, including the state or any political subdivision of the state, who negligently violates s. 146.82 or 146.83 shall be liable to any person

injured as a result of the violation for actual damages to that person, exemplary damages of not more than $1,000 and costs and reasonable actual attorney fees."

197.     Here, Defendant violated § 146.82 by, *inter alia*, failing to keep health care records confidential and by releasing PHI via the Data Breach without the consent of Plaintiff and Class Members.

198.     Plaintiff and Class members seek all monetary and non-monetary relief allowed by law—e.g., to enjoin violations, compel compliance, and seek exemplary damages.

**NINTH CAUSE OF ACTION**
**Declaratory Judgment**
**(On Behalf of Plaintiff and the Class)**

199.     Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

200.     Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. The Court has broad authority to restrain acts, such as those alleged herein, which are tortious and unlawful.

201.     In the fallout of the Data Breach, an actual controversy has arisen about Defendant's various duties to use reasonable data security. On information and belief, Plaintiff alleges that Defendant's actions were—and *still* are—inadequate and unreasonable. And Plaintiff and Class members continue to suffer injury from the ongoing threat of fraud and identity theft.

202.     Given its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a.     Defendant owed—and continues to owe—a legal duty to use reasonable data security to secure the data entrusted to it;

38

b.     Defendant has a duty to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act;

c.     Defendant breached, and continues to breach, its duties by failing to use reasonable measures to the data entrusted to it; and

d.     Defendant breaches of its duties caused—and continues to cause—injuries to Plaintiff and Class members.

203.   The Court should also issue corresponding injunctive relief requiring Defendant to use adequate security consistent with industry standards to protect the data entrusted to it.

204.   If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy if Defendant experiences a second data breach.

205.   And if a second breach occurs, Plaintiff and the Class will lack an adequate remedy at law because many of the resulting injuries are not readily quantified in full and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages— while warranted for out-of-pocket damages and other legally quantifiable and provable damages— cannot cover the full extent of Plaintiff and Class members' injuries.

206.   If an injunction is not issued, the resulting hardship to Plaintiff and Class members far exceeds the minimal hardship that Defendant could experience if an injunction is issued.

207.   An injunction would benefit the public by preventing another data breach—thus preventing further injuries to Plaintiff, Class members, and the public at large.

## PRAYER FOR RELIEF

Plaintiff and Class members respectfully request judgment against Defendant and that the Court enter an order:

A.      Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing his counsel to represent the Class;

B.      Awarding declaratory and other equitable relief as necessary to protect the interests of Plaintiff and the Class;

C.      Awarding injunctive relief as necessary to protect the interests of Plaintiff and the Class;

D.      Enjoining Defendant from further unfair and/or deceptive practices;

E.      Awarding Plaintiff and the Class damages including applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F.      Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G.      Awarding attorneys' fees and costs, as allowed by law;

H.      Awarding prejudgment and post-judgment interest, as provided by law;

I.      Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J.      Granting other relief that this Court finds appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all claims so triable.

Date: September 23, 2024

Respectfully submitted,

By: /s/ Samuel J. Strauss
Samuel J. Strauss (SBN: 1113942)
Raina C. Borrelli (*Pro Hac Vice* forthcoming)
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
T: (872) 263-1100
F: (872) 263-1109
sam@straussborrelli.com
raina@straussborrelli.com

J. Gerard Stranch, IV (*Pro Hac Vice* forthcoming)
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
T: (615) 254-8801
F: (615) 255-5419
gstranch@stranchlaw.com

*Attorneys for Plaintiff and Proposed Class*